# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 08-07469 MMM (PJWx) | Date | December 8, 2008 |

| | |
|---|---|
| Title | *Mirna E. Pereira v. Gate Gourmet, Inc. et al.* |

Present: The Honorable   MARGARET M. MORROW

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   Order to Show Cause Why Action Should Not Be Remanded to State Court for Lack of Subject Matter Jurisdiction

     Mirna Pereira filed this putative class action in Los Angeles Superior Court on October 8, 2008.[1] The complaint asserts two causes of action: (1) failure to pay wages in a timely fashion upon termination in violation of California Labor Code §§ 201 and 202, and (2) unfair competition in violation of California Business and Professions Code § 17200. Gate Gourmet, Inc. removed the action to federal court on November 12, 2008,[2] invoking the court's diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.[3]

---

     [1]See Class Action: Complaint for Damages and Restitution (1) Failure to Pay Wages Timely Upon Termination in Violation of Labor Code § 201 et seq. (2) Unfair Competition in Violation of Bus. and Prof. Code § 17200 ("Complaint"), attached as Exh. A to Notice of Removal of Action Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, 1453 [Class Action Fairness Act] ("Notice of Removal"), Docket No. 1 (Nov. 12, 2008).

     [2]Defendant was served with summons and complaint on October 13, 2008, and removed within thirty days, satisfying 28 U.S.C. § 1446(b). (Notice of Removal, ¶¶ 2-3.)

[3]See Notice of Removal, ¶¶ 1-8.

### A.     Legal Standard Governing Removal Jurisdiction Under the Class Action Fairness Act ("CAFA")

The right to remove a case to federal court is entirely a creature of statute. See, e.g., *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979) ("The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress. We look to federal law to determine whether the elements of removal jurisdiction have been established under the statutes, keeping in mind that removal statutes are strictly construed against removal" (citations omitted)). The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal question or is between citizens of different states. See 28 U.S.C. §§ 1441(a), (b); see also 28 U.S.C. §§ 1446 (setting forth removal procedures generally); 1453 (setting forth removal procedures for class actions). Only those state court actions that could originally have been filed in federal court may be removed. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending . . ."); see also, e.g., *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by defendant. Absent diversity of citizenship, federal-question jurisdiction is required" (footnotes omitted)); *Snow v. Ford Motor Co.*, 561 F.2d 787, 789 (9th Cir. 1977) ("[I]n the absence of a specific statutory exception, a federal court can exercise removal jurisdiction over a case only if it would have had jurisdiction over it as originally brought by the plaintiff" (citations omitted)).

In 2005, Congress enacted the Class Action Fairness Act of 2005 ("CAFA"), Pub.L. No. 109-2, 119 Stat. 4. CAFA, which applies to actions commenced on or after February 18, 2005, provides district courts with original jurisdiction over civil actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and "is a class action in which[, *inter alia*,] any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2); see also *Luther v. Countrywide Homes Loans Servicing LP*, 533 F.3d 1031, 1033-34 (9th Cir. 2008) ("The Class Action Fairness Act of 2005 § 4(a), 28 U.S.C. § 1332(d)(2), amended the requirements for diversity jurisdiction by granting district courts original jurisdiction over class actions exceeding $5,000,000 in controversy where at least one plaintiff is diverse from at least one defendant. In other words, complete diversity is not required. CAFA also provided for such class actions to be removable to federal court. See 28 U.S.C. § 1453(b). CAFA was enacted, in part, to 'restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction.' Pub.L. No. 109-2, § 2(b)(2), 119 Stat. 4, 5 (codified as a note to 28 U.S.C. § 1711)").

Under CAFA, the number of members of all proposed plaintiff classes must exceed 100 in the aggregate. 28 U.S.C. § 1332(d)(5)(B). See also *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020-21 (9th Cir. 2007) ("As a threshold matter, CAFA applies to 'class action' lawsuits where the aggregate number of members of all proposed plaintiff classes is 100 or more persons and where the

primary defendants are not 'States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief.' § 1332(d)(5). . . . Once the prerequisites of § 1332(d)(5) are satisfied, CAFA vests federal courts with 'original' diversity jurisdiction over class actions if (1) the aggregate amount in controversy exceeds $5,000,000, and (2) any class member is a citizen of a state different from any defendant. § 1332(d)(2)"); *id.* at 1021 n. 3 ("The Fifth Circuit characterized § 1332(d)(5) as an 'exception' to CAFA jurisdiction conferred under § 1332(d)(2). . . . We view § 1332(d)(5) somewhat differently. . . . [S]atisfaction of § 1332(d)(5) serves as a prerequisite, rather than as an exception, to jurisdiction under § 1332(d)(2). This distinction is important because, as we address later, there are 'exceptions' to the statute in which jurisdiction otherwise exists under § 1332(d)(2) but the federal courts either *may* or *must* decline to exercise that jurisdiction. See, e.g., § 1332(d)(3)-(4)").

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988) and *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1992)). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990) and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

As the Ninth Circuit has explained, CAFA does not disturb the traditional rule that the burden of establishing removal jurisdiction is on the proponent of federal jurisdiction. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) ("We . . . hold that under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction").

      **B.**      **Whether Defendant Has Established That Removal is Proper**

In its Notice of Removal, Gate Gourmet asserts that it is a Delaware corporation with its principal place of business in Reston, Virginia.[4] Pereira is a citizen of California.[5] Consequently, as required by 28 U.S.C. § 1332(c)(1), defendant is a citizen of states other than California, and minimal diversity as required under CAFA is present.

---

[4]Notice of Removal, ¶ 12 ("Defendant is a Delaware corporation with its principal place of business in Reston, Virginia").

[5]Complaint, ¶ 3 ("Plaintiff is a resident of California").

3

Pereira alleges that the putative class has not less than 400 members,[6] while Gate Gourmet asserts that the actual number of California employees who resigned or were discharged during the alleged class period totals 3,716.[7]  Either figure far exceeds the minimum class size required by § 1332(d)(5).

The sole remaining hurdle to establishing jurisdiction, therefore, is a showing that the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint."  *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008) (citing *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002)).  "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe."  *Id.* (emphasis original; citing *Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005) and *Scherer v. Equitable Life Assurance Society of the United States*, 347 F.3d 394, 399 (2d Cir. 2003)).

Pereira's complaint does not specify the amount in controversy; as a result, Gate Gourmet bears the burden of proving, by a preponderance of the evidence, that the jurisdictional amount in controversy is satisfied.  See, e.g., *Korn*, 536 F.Supp.2d at 1205 ("[A] defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992).  In addition to the contents of the removal petition, the court considers 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal,' such as affidavits or declarations.  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (internal quotations omitted). . ."); *Harrington v. Mattel, Inc.*, C07-05110 MJJ, 2007 WL 4556920, *3 (N.D. Cal. Dec. 20, 2007) ("Because it is not clear from the face of the complaint if the jurisdictional amount in controversy is met, Defendants have the burden to prove, by a preponderance of the evidence, that the amount exceeds $5 million [citing *Matheson*

---

[6]*Id.*, ¶ 10(a) ("While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff is informed and believes and thereon alleges that there are not less than 400 Class members").

[7]Notice of Removal, ¶ 10 ("Defendant believes that approximately three thousand seven hundred sixteen (3,716) California employees resigned or were discharged during the alleged class period as pled on the face of the Complaint"); see also Declaration of Carmen Ehlers in Support of Defendant's Removal of Action Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, 1453 [Class Action Fairness Act] ("Ehlers Decl."), ¶ 4 ("Based on my review of Gate Gourmet's payroll records, there are a total of approximately 3,716 former California employees who: (1) resigned employment with Gate Gourmet in California without giving 72 hours notice of resignation between October 5, 200[4] and the present, (2) resigned employment with Gate Gourmet in California with 72 hours notice between October 8, 2004 and the present, and (3) were discharged from their employment with Gate Gourmet between October 8, 2004 and the present").

4

*v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold")]"; *Sanchez v. Wal-Mart Stores, Inc.*, Civ. S-06-cv-2573 DFL KJM, 2007 WL 1345706, *1 (E.D. Cal. May 8, 2007) ("In her complaint, Sanchez does not allege a specific amount of damages. Therefore, this court has jurisdiction only if defendants establish by a preponderance of the evidence that potential damages exceed $5,000,000"); *Davis v. Chase Bank U.S.A., N.A.*, 453 F.Supp.2d 1205, 1208 (C.D. Cal. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met. . . . Under this standard, the defendant must provide evidence that it is more likely than not that the amount in controversy satisfies the federal diversity jurisdictional amount requirement. . . . In its discretion, a district court may accept certain post-removal admissions as determinative of the amount in controversy" (citations and quotation marks omitted)).

In its Notice of Removal, Gate Gourmet alleges that the amount in controversy is approximately $9,070,012, computed as follows.[8] Under California Labor Code § 203, when an employee is discharged or resigns, an employer who fails to timely pay wages owed to that individual is liable for a penalty amounting to one day of pay for each day the wages are late, up to a maximum of 30 days. See CAL. LAB. CODE § 203 ("If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days"). The complaint alleges violations of Labor Code §§ 201-202 and requests damages in the form of waiting time penalties pursuant to § 203.[9] For each of the 3,716 putative class members,[10] Gate Gourmet has multiplied an average hourly wage of $10.17[11] by an

---

[8]Notice of Removal, ¶ 19.

[9]Complaint, Prayer for Relief at 7.

[10]As noted, the complaint merely states that the class consists of "not less than 400" members. Plaintiff's proposed class definition, however, would include
   "All persons who:
1)   Resigned employment with Gate Gourmet in California without giving 72 hours notice of resignation on or after October 5, 2004 through date Notice is mailed to the Class;
2)   Resigned employment with Gate Gourmet in California on or after October 8, 2004 through the date Notice is mailed to the class, who had given at least 72 hours Notice of their resignation; and
3)   Gate Gourmet discharged in California on or after October 8, 2004 through the date Notice is mailed to the Class."

eight (8) hour work day,[12] for each of 30 days' of waiting time penalty period.[13]

Defendant assumes that each class member will be entitled to waiting time penalties for the entire 30-day statutory period. Pereira's allegations, however, indicate that a much shorter time frame is in fact at issue. The complaint states that defendant "paid all former employees in the class for their last day of work, on the Friday of the week following the week in which they stopped working."[14] This means that, at most, an individual class member would be eligible for *ten* days of statutory penalties under § 203.[15] Even assuming every class member accrued ten days of waiting time penalties (although Gate Gourmet proffers no evidence that this is so ), the amount in

---

(Complaint, ¶ 9.) Gate Gourmet has submitted the declaration of a payroll specialist who states that there are approximately 3,716 former Gate Gourmet employees who fall into one or more of these categories. (Ehlers Decl., ¶ 4.) Although it is possible that the final wages of some number of this larger group were timely paid, Pereira's proposed class definition does not include this additional limitation. She asserts, however, that Gate Gourmet's payroll policies and practices necessarily prevent it from paying final wages in a timely fashion. (Complaint, ¶ 10(c) ("Plaintiff is informed and believes and thereon alleges that Gate Gourmet has payroll policies and practices that necessarily cause it to not timely pay Class members final wages due upon the end of their employment. . . . Plaintiff is informed and believes, and thereon alleges, that Defendant[ ] paid all former employees in the class for their last day of work, on the Friday of the week following the week in which they stopped working").) Given this allegation, it is appropriate the use the 3,716 figure to calculate the amount in controversy.

[11]Ehlers Decl., ¶ 5 ("The average hourly rate of the 3,716 former California employees identified above is $10.17 per hour").

[12]The complaint contains no allegations regarding the average number of hours per day that Gate Gourmet employees work. Defendant proffers no proof on this subject and has not established it by a preponderance of the evidence as required by Ninth Circuit precedent. Rather, its calculation simply assumes an 8-hour work day. (Notice of Removal, ¶ 19 ("Assuming an eight (8) hour day . . .").)

[13]3,716 potential class members x $10.17 per hour x 8 hours per day x 30 days' waiting time penalty = $9,070,012.80.

[14]Complaint, ¶ 10(c).

[15]If the individual resigned or was discharged on a Monday and paid the following Friday, she would be entitled to ten days of statutory penalties under § 203. See CAL. CODE CIV. PROC. § 12 ("Computation of time. The time in which any act provided by law is to be done is computed by excluding the first day, and including the last, unless the last day is a holiday, and then it is also excluded"); CAL. GOV. CODE § 6800 (same).

controversy based on the face of the complaint is $3,023,337.60.[16] Because CAFA requires that there be $5,000,000 in controversy, the court is in doubt as to whether it has subject matter jurisdiction to hear the action.

The court accordingly orders Gate Gourmet to show cause on or before **December 15, 2008** why this action should not be remanded to Los Angeles Superior Court for lack of subject matter jurisdiction. Plaintiff may file a response no later than **December 22, 2008**. The court vacates the briefing schedule on Gate Gourmet's pending motions to dismiss and strike portions of plaintiff's complaint,[17] as well as the hearing on those motions, currently set for December 15, 2008. A new briefing schedule and hearing date will be set, if appropriate, once the jurisdictional issues addressed in this order have been resolved.

---

[16] 3,716 potential class members x $10.17 per hour x 8 hours per day x 10 days' waiting time penalties = $3,023,337.60. This figure too may overstate the actual amount in controversy, as Gate Gourmet has proffered no evidence that all class members worked 8 hours per day.

[17] See Order Advancing Briefing Schedule, Docket No. 9 (Nov. 21, 2008).