## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-07469 MMM (PJWx) | Date | January 26, 2009 |
|---|---|---|---|

| Title | *Mirna E. Pereira v. Gate Gourmet, Inc. et al.* |
|---|---|

| Present: The Honorable | MARGARET M. MORROW | |
|---|---|---|
| ANEL HUERTA | | N/A |
| Deputy Clerk | | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** Order to Show Cause Why Action Should Not Be Remanded to State Court for Lack of Subject Matter Jurisdiction

### I. BACKGROUND

Mirna Pereira filed this putative class action in Los Angeles Superior Court on October 8, 2008.[1] The complaint pleads two causes of action: (1) failure to pay wages in a timely fashion following termination in violation of California Labor Code §§ 201 and 202 and (2) unfair competition in violation of California Business and Professions Code § 17200. Gate Gourmet, Inc. removed the action to federal court on November 12, 2008,[2] invoking the court's diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.[3]

---

[1] See Class Action: Complaint for Damages and Restitution (1) Failure to Pay Wages Timely Upon Termination in Violation of Labor Code § 201 et seq. (2) Unfair Competition in Violation of Bus. and Prof. Code § 17200 ("Complaint"), Exh. A to Notice of Removal of Action Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, 1453 [Class Action Fairness Act] ("Notice of Removal"), Docket No. 1 (Nov. 12, 2008).

[2] Defendant was served with summons and complaint on October 13, 2008, and removed within thirty days, satisfying 28 U.S.C. § 1446(b). (Notice of Removal, ¶¶ 2-3.)

[3] See Notice of Removal, ¶¶ 1-8.

On December 8, 2008, the court issued an order to show cause why the action should not be remanded to state court for lack of subject matter jurisdiction, citing deficiencies in Gate Gourmet's notice of removal regarding the alleged amount in controversy.[4]  Gate Gourmet filed a response on December 15, 2008.[5]  Pereira responded on December 22, 2008.[6]

## II.  DISCUSSION

A.  **Legal Standard Governing Removal Jurisdiction Under the Class Action Fairness Act**

In its prior order, the court set forth the legal standard governing removal jurisdiction under the Class Action Fairness Act ("CAFA"); that discussion is incorporated herein by reference.  The court explained that the Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and thus that "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985), *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1992)).  "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990) and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

CAFA does not disturb the traditional rule that the burden of establishing that removal is proper is on the proponent of federal jurisdiction.  *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) ("We . . . hold that under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction").

When, as here, a complaint does not specify the amount in controversy, the removing defendant must prove, by a preponderance of the evidence, that the jurisdictional amount is met.  See, e.g., *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008) (" In addition to the contents of the removal petition, the court considers 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal,' such as affidavits or declarations.  *Valdez v. Allstate Ins. Co.*, 372

---

[4]Order to Show Cause Shy Action Should Not Be Remanded to State Court for Lack of Subject Matter Jurisdiction ("OSC"), Docket No. 13 (Dec. 8, 2008).

[5]Memorandum in Support of Removal under the Class Action Fairness Act ("Gate Gourmet Resp."), Docket No. 15 (Dec. 15, 2008).

[6]Plaintiff's Response to Defendant Gate Gourmet Inc.'s Memorandum in Support of Removal ("Pereira Opp."), Docket No. 18 (Dec. 22, 2008).

F.3d 1115, 1117 (9th Cir. 2004) (internal quotations omitted). . .").[7]

### B. Whether Defendant Has Established That Removal is Proper

#### 1. Defendant's Notice of Removal

Under California Labor Code § 203, when an employee is discharged or resigns, an employer who fails to timely pay wages owed to that individual is liable for a penalty amounting to one day of pay for each day the wages are late, up to a maximum of 30 days. See CAL. LAB. CODE § 203 ("If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days"). The complaint alleges violations of Labor Code §§ 201-202 and requests damages in the form of waiting time penalties pursuant to § 203.[8]

In its Notice of Removal, Gate Gourmet multiplied the average hourly wage of $10.17[9] by an

---

[7]See also, e.g., *Harrington v. Mattel, Inc.*, C07-05110 MJJ, 2007 WL 4556920, *3 (N.D. Cal. Dec. 20, 2007) ("Because it is not clear from the face of the complaint if the jurisdictional amount in controversy is met, Defendants have the burden to prove, by a preponderance of the evidence, that the amount exceeds $5 million [citing *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold")]"; *Sanchez v. Wal-Mart Stores, Inc.*, Civ. S-06-cv-2573 DFL KJM, 2007 WL 1345706, *1 (E.D. Cal. May 8, 2007) ("In her complaint, Sanchez does not allege a specific amount of damages. Therefore, this court has jurisdiction only if defendants establish by a preponderance of the evidence that potential damages exceed $5,000,000"); *Davis v. Chase Bank U.S.A., N.A.*, 453 F.Supp.2d 1205, 1208 (C.D. Cal. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met. . . . Under this standard, the defendant must provide evidence that it is more likely than not that the amount in controversy satisfies the federal diversity jurisdictional amount requirement. . . . In its discretion, a district court may accept certain post-removal admissions as determinative of the amount in controversy" (citations and quotation marks omitted)).

[8]Complaint, Prayer for Relief at 7.

[9]Declaration of Carmen Ehlers in Support of Defendant's Removal of Action Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, 1453 [Class Action Fairness Act] ("Ehlers Removal Decl."), ¶ 5 ("The average hourly rate of the 3,716 former California employees identified above is $10.17 per hour").

eight (8) hour work day,[10] for 30 days of waiting time.[11] It then multiplied this number by 3,716, the number of individuals that Gate Gourmet believes are in the putative class.[12] Gate Gourmet thus alleged that the amount in controversy is approximately $9,070,012.[13]

In its order to show cause, the court noted that Gate Gourmet assumed that each class member would be entitled to waiting time penalties for the entire thirty-day statutory period. Because Pereira's

---

[10]The complaint contains no allegations regarding the average number of hours per day that Gate Gourmet employees work. In its prior order to show cause, the court noted that Gate Gourmet had simply assumed an eight-hour work day, without adducing corroborating evidence. In support of its response, Gate Gourmet submitted the declaration of its current payroll manager, who states that the average number of hours worked per day by Gate Gourmet's California employees is eight. (See Supplemental Declaration of Carmen Ehlers in Support f Defendant Gate Gourmet, Inc.'s Memorandum of Points and Authorities in Support of Removal Under the Class Action Fairness Act, ¶ 2.)

[11]3,716 potential class members x $10.17 per hour x 8 hours per day x 30 days' waiting time penalty = $9,070,012.80.

[12]Although the complaint alleges that the class consists of "not less than 400" members, it includes
"[a]ll persons who:
1)   Resigned employment with Gate Gourmet in California without giving 72 hours notice of resignation on or after October 5, 2004 through the date Notice is mailed to the Class;
2)   Resigned employment with Gate Gourmet in California on or after October 8, 2004 through the date Notice is mailed to the class, who had given at least 72 hours Notice of their resignation; and
3)   Gate Gourmet discharged in California on or after October 8, 2004 through the date Notice is mailed to the Class." (Complaint, ¶ 9.)
With its Notice of Removal, Gate Gourmet submitted the declaration of a payroll specialist who states that approximately 3,716 former Gate Gourmet employees fall into one or more of these categories. (Ehlers Removal Decl., ¶ 4.) Although it is possible that the final wages of some number of this group were timely paid, Pereira's proposed class definition does not limit class membership to those who did not receive their final wages in a timely fashion because Pereira asserts that Gate Gourmet's payroll policies and practices necessarily prevent it from making timely payment. (Complaint, ¶ 10(c) ("Plaintiff is informed and believes and thereon alleges that Gate Gourmet has payroll policies and practices that necessarily cause it to not timely pay Class members final wages due upon the end of their employment. . . . Plaintiff is informed and believes, and thereon alleges, that Defendant[ ] paid all former employees in the class for their last day of work, on the Friday of the week following the week in which they stopped working").) Given this allegation, it is appropriate for present purposes to assume that there are 3,716 people in the putative class.

[13]Notice of Removal, ¶ 19.

complaint alleged that defendant "paid all former employees in the class for their last day of work . . . on the Friday of the week following the week in which they stopped working,"[14] the court noted that it appeared individual class members would be eligible at most for *ten* days of statutory penalties under § 203.[15]  Even if every member of the class were entitled to recover ten days of waiting time penalties, the court observed, the amount in controversy would be only $3,023,337.60.[16]  Because CAFA requires that the amount in controversy be at least $5,000,000, the court expressed doubt as to whether it had subject matter jurisdiction to hear the action.

### 2. Defendant's Response to the Court's Order to Show Cause

In its response to the court's order to show cause, Gate Gourmet asserts that Pereira's complaint contains "inconsistent allegations."[17]  Although acknowledging that Pereira alleged that it paid former employees "on the Friday of the week following the week in which they stopped working,"[18] Gate Gourmet notes that the complaint also asserts that "Plaintiff and members of the Class are entitled to one day of pay for each day wages paid to them, post-termination, were late, from the day their earned and unpaid wages were due until paid, up to a maximum of 30 days."[19]  Gate Gourmet argues that the two allegations "lead to two different calculations as to the amount in controversy," and that, since the amount in controversy "is to be estimated [ ] on the assumption that a jury would return a full verdict for the plaintiff class on all claims made in the complaint," it is entitled to assume that the amount in controversy exceeds $9 million.[20]  See *Korn*, 536 F.Supp.2d at 1205 ("In measuring the amount in controversy, the court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint").  Gate Gourmet contends its conclusion is supported by the fact that Pereira will not stipulate that she seeks a maximum of ten days'

---

[14]Complaint, ¶ 10(c).

[15]If the individual resigned or was discharged on a Monday and paid the following Friday, she would be entitled to ten days of statutory penalties under § 203.  See CAL. CODE CIV. PROC.§ 12 ("Computation of time.  The time in which any act provided by law is to be done is computed by excluding the first day, and including the last, unless the last day is a holiday, and then it is also excluded"); CAL. GOV. CODE § 6800 (same).

[16]3,716 potential class members x $10.17 per hour x 8 hours per day x 10 days' waiting time penalties = $3,023,337.60.

[17]Gate Gourmet Resp. at 2.

[18]Complaint, ¶ 10(c).

[19]Complaint, ¶ 17.

[20]Gate Gourmet Resp. at 1-2.

5

penalties per class member.[21]

In a letter responding to Gate Gourmet's request for such a stipulation, plaintiff's counsel explain that "[t]he reference to thirty days in the Complaint was not to suggest that 30 days in penalties are owed to all the class members," but rather that thirty days "is the limit of waiting time penalties that can be paid to any class member."[22] Conceding the possibility "that in a class of over 3000 persons, a few class members were paid thirty or more days late," counsel refused to stipulate to limit to ten days the maximum waiting time penalty class members could recover.[23]

Given this fact, Gate Gourmet contends that under *Korn*, it has sufficiently established that the court has jurisdiction. *Korn*, however, is inapposite. There, plaintiff alleged that each class member was entitled to civil penalties under California Civil Code § 1747.08. *Korn*, 536 F.Supp.2d at 1206. That statute provides for a maximum penalty of $1,000 per violation, which plaintiff sought in his complaint. *Id.* As a consequence, and because defendant had submitted a declaration stating that it had processed more than 5,000 credit card transactions in California during the preceding year, the district court held that the amount in controversy requirement under CAFA had been satisfied. *Id.* ("Because plaintiff alleges in his complaint that defendant is liable for up to $1000 per violation of § 1747.08 in the processing of credit card purchases and returns, and because defendant has proffered evidence that it has processed more than 5,000 credit card transactions, Polo has demonstrated by a preponderance of the evidence that the amount in controversy exceeds $5,000,000").

In contrast to Civil Code § 1747.08, California Labor Code § 203 establishes a statutory maximum *time period* over which penalties can accrue; the specific *amount* of such penalties is dependent on each class member's wage and the number of days the defendant delayed in making the payment due. As stated in plaintiff's response to defendant's request for a stipulation, it is possible that in a class encompassing more than 3,000 members, some individuals are entitled to recover more than ten days of waiting time penalties. Pereira has specifically alleged, however, that *as a matter of custom and practice*, Gate Gourmet paid employees who resigned or were terminated the week following their separation from the company. This allegation is entitled to at least as much weight as Pereira's prayer for waiting time penalties "up to a maximum of 30 days." Given the allegation regarding the company's custom and practice, Gate Gourmet, as the proponent of federal jurisdiction, must adduce evidence that it is *more likely than not* that a sufficient number of putative class members are entitled to recover more than ten days of waiting time penalties that the amount in controversy is at least $5,000,000. This is

---

[21]*Id.* at 4.

[22]*Id.*, Exh. B at 2.

[23]*Id.* ("Prior to discovery, I cannot know that no one was paid over ten days late; therefore, I cannot enter into the stipulation you proposed. I find it extraordinary that you would think that I would even consider the stipulation you suggested without any proof that no putative class member was paid more than 10 days late. My co-counsel, me and my firm take our obligation to putative class members very seriously").

particularly true since under Ninth Circuit precedent, the removal statutes are strictly construed.

Citing *Korn*, Gate Gourmet argues that it need not "research, state, and prove the plaintiff's claims for damages" to satisfy the preponderance of the evidence standard. *Korn*, 536 F.Supp.2d at 1204-05 (citing *McCraw v. Lyons*, 863 F.Supp. 430, 434 (W.D. Ky. 1994)). While this is true, it is also true that "a court 'cannot base [its] jurisdiction on a [d]efendant's speculation and conjecture.'" *Id.* at 1205 (quoting *Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994, 1002 (9th Cir. 2007)). Rather, a removing defendant "must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum." *Id.* (citing *Gaus*, 980 F.2d at 567). Gate Gourmet has not done so in its response to the court's order to show cause. It relies exclusively and without supporting evidence on a calculation that assumes that all class members will be entitled to penalties for the maximum statutory period. The court need not decide whether such a calculation would have sufficed under the preponderance standard had Pereira not alleged that the company "paid all former employees in the class for their last day of work . . . on the Friday of the week following the week in which they stopped working."[24] Cf. *Nowak v. Innovative Aftermarket Systems, L.P.*, No. 4:06CV01622 ERW, 2007 WL 2454118, *5 (E.D. Mo. Aug. 23, 2007) ("Defendant IAS erroneously relies on the class representatives' average claim amount to calculate the other class members' actual damage amount. Defendant IAS's calculation is based on conjecture and cannot satisfy the preponderance of the evidence standard"). Rather, it need only conclude that, given Pereira's allegation regarding Gate Gourmet's custom and practice – an allegation Gate Gourmet has not disputed in its response to the court's order to show cause – Gate Gourmet must adduce more than a calculation regarding the maximum statutory penalties that could be recovered to show by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.

### III. CONCLUSION

Although it is under no obligation to do so, the court will afford Gate Gourmet a final opportunity to show that the amount in controversy requirement is met. Should Gate Gourmet continue to assert that federal jurisdiction is appropriate, the court directs it to submit further evidence, on or before **February 4, 2009,** demonstrating that it is more likely than not that the amount in controversy exceeds $5,000,000. Plaintiff may file a response no later than **February 11, 2009**. Failure to adduce sufficient evidence that the court has subject matter jurisdiction to hear this action will result in immediate remand to state court.

---

[24]Complaint, ¶ 10(c).